LAKEWOOD HILLS, L.L.C.,

        Plaintiff,

v

CITY OF EAST GRAND RAPIDS,

        Defendant.

Hon. Paul L. Maloney, Chief Judge

Civil Action No. 1:09-cv-603

---

| | |
|---|---|
| Arthur C. Spalding (P20808)<br>Paul A. McCarthy (P47212)<br>Eric R. Starck (P63247)<br>RHOADES McKEE PC<br>Attorneys for Plaintiff<br>161 Ottawa Avenue, NW, Suite 600<br>Grand Rapids, MI 49503<br>(616) 235-3500 | Steven F. Stapleton (P51571)<br>Michael J. Roth (P51795)<br>LAW WEATHERS<br>Attorneys for Defendant<br>333 Bridge Street, NW, Suite 800<br>Grand Rapids, MI 49504<br>(616) 459-1171 |

---

## CONSENT JUDGMENT

At a session of the Federal District Court of the Western District of Michigan held on the 10th day of June, 2010.

    PRESENT:  HON. PAUL L. MALONEY, District Court Judge

## STIPULATION AND CONSENT

Lakewood Hills, L.L.C. ("Lakewood Hills") and the City of East Grand Rapids (the "City") (collectively referred to herein as the "parties" and individually referred to herein as a "party") hereby stipulate and consent to the entry of this Consent Judgment. This Consent Judgment was drafted jointly by and is approved by the parties as to form and content. Notice of entry of this Consent Judgment is waived by the parties. The City represents that the entry of this Consent Judgment by the Court has been duly authorized and approved by the City Commission of the City on behalf of the City. Lakewood Hills represents that entry of this

Consent Judgment has been duly authorized and approved by its members. All conditions precedent to giving effect to the terms and conditions of this Consent Judgment are in compliance with all procedural and substantive requirements of all applicable law. The terms and conditions of this Consent Judgment are within the scope of the Court's jurisdiction and remedial powers and are valid and enforceable.

Dated: June _____, 2010

LAKEWOOD HILLS, L.L.C., a Michigan limited liability company

By: _____
      Its Authorized Member

Dated: June_____, 2010

RHOADES MCKEE PC
Attorneys for Plaintiff

By: _____
      Arthur C. Spalding (P20808)
      Paul A. McCarthy (P47212)
      Eric R. Starck (P63247)
      161 Ottawa Avenue, N.W., Suite 800
      Grand Rapids, MI 49503
      (616) 235-3500

CITY OF EAST GRAND RAPIDS

By: _____
      Cindy Bartman
      Its Mayor

And by: _____
      Karen K. Brower
      Its Clerk

Dated: June _7_, 2010

LAW WEATHERS
Attorneys for Defendant

By: _____
      Steven F. Stapleton (P51571)
      333 Bridge Street, N.W., Suite 800
      Grand Rapids, MI 49503
      (616) 459-1171

<u>**RECITALS**</u>

This proceeding involves the Lakewood Hills Apartments; currently owned by Lakewood Hills and located on Lakeside Drive, SE, East Grand Rapids, being permanent parcel number 41-14-33-276-026, which property ("the Property") is legally described as set forth in **Exhibit A**. This Consent Judgment applies to the Property and the Additional Property as defined herein. The Property and the Additional Property, together, may also be referred to in this Consent Judgment as the "Combined Property."

1.  The parties wish to settle and resolve this proceeding and all other pending and existing claims related to the Property involving the parties that arise out of the City of East Grand Rapids Zoning Ordinance (the "Zoning Ordinance") and to avoid and terminate all other pending litigation between Lakewood Hills and the City related to the Property and the Zoning Ordinance, all in accordance with the terms and provisions of this Consent Judgment.

2.  A significant motivation of the parties to stipulate and consent to the entry of this Consent Judgment is the desire to end this proceeding, given the uncertainty of the outcome and the potential for greater litigation expense. Furthermore, the City believes that this Consent Judgment is in the best interests of the City in that it will provide dwelling units which contain modern amenities, such as elevators, underground parking, improved access to electronic technology and improved safety and fire protection.

3.  The highly unusual circumstances present in this proceeding and the unique location of the Property allows entry of this Consent Judgment without setting any precedent with regard to any other existing or future development or use of property in the City.

## TERMS OF JUDGMENT

NOW THEREFORE, in accordance with the Stipulation and Consent of the parties, IT IS ORDERED AND ADJUDGED as follows:

1.    Development of the Property.  Notwithstanding any provision of the Zoning Ordinance to the contrary, as the same now exists or as the same may in the future be amended from time to time, Lakewood Hills may, pursuant to the terms of this Consent Judgment, develop, construct, operate, maintain and use the Combined Property, as defined herein, for (a) sixty-five (65) dwelling units, each configured for occupation by no more than one family, contained in three (3) distinct residential structures, each of which residential structures shall be divided into two (2) separate but attached buildings, (b) three (3) garage structures, and (c)  an office/manager's apartment, including a garage and maintenance shop (all such residential and garage and other structures are collectively referred to herein as the "Structures").  Lakewood Hills may develop the Combined Property and construct the Structures and other improvements on the Combined Property in compliance with the drawings and configurations depicted in **Exhibit B. Exhibit B** is composed of the drawings and configurations reviewed and approved by the City Commission prior to approving this Consent Judgment.   The drawings and configurations are deemed to have final site plan approval by the City, as provided in the Zoning Ordinance (the "Approved Site Plan").   No development of the Property or the Additional Property, as defined herein, shall occur except in full compliance with such drawings and configurations unless any change is first authorized and approved by the City Commission or its authorized representative.  The term "family," as used in this Consent Judgment, shall include unrelated persons living with a tenant who provide housekeeping services, health care services and/or other services of a similar nature.

(a)    Lakewood Hills shall convey to the City an easement for a public sidewalk to be located at the south end of the Property (the "Easement"), as depicted in **Exhibit B,** which Easement shall be in the form of the Sidewalk Easement Agreement attached hereto as **Exhibit C.** The use of the Easement Area (as defined and described in the Sidewalk Easement Agreement) shall be limited to and for the sole purpose of constructing, installing, using, operating, repairing, maintaining, replacing and improving a public sidewalk (the "sidewalk") for pedestrian and/or non-motorized bicycle traffic. The sidewalk may not be used by anyone using a skateboard or motorized vehicle. A person who requires transportation by reason of a disability, as defined under the Americans with Disabilities Act of 1990, as amended, may operate and use a motorized or non-motorized wheelchair or any other similar mode of transportation on the sidewalk. Further, the City may use motorized equipment on the sidewalk for the purpose of removal of snow from the sidewalk or the repair of the sidewalk. The City shall construct, repair and maintain the sidewalk at its sole expense. The City shall use reasonable efforts to enforce compliance with the foregoing restrictions and limitations on use of the Easement Area and sidewalk and to minimize excessive noise from occurring along the sidewalk during evening and early morning hours. To the extent Lakewood Hills claims that a nuisance exists with respect to the use of the sidewalk or Easement Area which affects residents of two or more dwelling units of Lakewood Hills Apartments, then Lakewood Hills may file a written request with the City Commission seeking to modify this Consent Judgment (as it relates to the Easement) and the Sidewalk Easement Agreement. The City Commission may, among other potential remedies, allow Lakewood Hills to restrict use of the sidewalk and the Easement area during specific time periods. If Lakewood Hills is not satisfied with the determination of the City Commission, then Lakewood Hills may file a motion with this Court seeking to modify

this Consent Judgment (as it relates to the Easement) and the Sidewalk Easement Agreement to allow Lakewood Hills to, among other remedies, restrict the use of the sidewalk and Easement area during specific time periods, which motion this Court may grant if it finds that a nuisance condition has been proven by a preponderance of the evidence submitted to this Court. A nuisance shall be defined as an unreasonable interference with the use and enjoyment of two or more dwelling units located on the Property.

(b)     All construction and development on the Property shall be conducted and completed in accordance with all applicable federal and state laws and local ordinances and codes, except as expressly otherwise provided by this Consent Judgment.

(c)     The City shall convey to Lakewood Hills by quitclaim deed (the "Quitclaim Deed"), free and clear of all encumbrances, restrictions and covenants, the property legally described on **Exhibit D** (the "Additional Property"). The legal description of the Combined Property, as defined herein, is set forth on **Exhibit E**. The Additional Property is currently excess land to the road right-of-way of Lakeside Drive, will be used by Lakewood Hills to expand the distances between the Structures and will not increase the density permitted for development of the Property by Lakewood Hills.

(d)     The Quitclaim Deed shall be executed by the City and delivered to Lakewood Hills within fifteen (15) days after the issuance of a building permit for Phase 1, as identified in this Consent Judgment. The Easement shall be executed by Lakewood Hills and delivered to the City within fifteen (15) days after the issuance of a building permit for Phase 1, as identified in this Consent Judgment. The delivery of the Quitclaim Deed and the Easement shall occur simultaneously.

(e)     Lakewood Hills may demolish existing buildings located on the Property and construct new buildings in no more than three (3) phases. Demolition and construction shall begin with Phase 1. Any other phase may be combined with any adjoining phase. The Existing Structures are numbered 1 through 4, beginning with No. 1 at the north end of the Property. Lakewood Hills shall move diligently to complete all phases as depicted in the attached exhibits, subject to the availability of financing, leasing of the units and/or other factors outside of Lakewood Hills' control. Lakewood Hills shall proceed with demolition and construction as follows:

(i)     **Phase 1:** The boundary of Phase 1 shall be as depicted on **Exhibit B**. Existing Structure No. 3, also described as 565 & 609 Lakeside Drive, together with Existing Structure No. 4, also described as 613, 617 and 621 Lakeside Drive, shall be demolished. The carport nearby to Existing Structure No. 4 shall be demolished. Buildings 5 & 6, as depicted on **Exhibit B**, shall be constructed. Surface parking and garages, as depicted on **Exhibit B** and located wholly within the boundary of Phase 1, together with such adjoining driveway and surface parking located in Phase 2 as is reasonably necessary to connect with existing surface parking and driveways, shall be constructed. Lakewood Hills shall construct a retaining wall along the south end of the Property. Lakewood Hills shall have the obligation to repair, maintain and replace the retaining wall, except for removal of graffiti as provided in **Exhibit C**. The public sidewalk referred to in Paragraph 1(a) of this Consent Judgment shall be constructed by the City in this Phase. The public sidewalk shall be constructed following the construction of the retaining wall and prior to the erection of any fence along the Easement area.

(ii)     **Phase 2:** The boundary of Phase 2 shall be as depicted on **Exhibit B**. Existing Structure No. 2, also described as 545, 551, 555 and 559 Lakeside Drive, shall be

demolished. In conjunction with Phase 2, a portion or all of the existing carports behind Existing Structures 1 and 2 may be demolished  New Structure No. 2, containing buildings 3 & 4 as depicted on **Exhibit B**, shall be constructed. The temporary driveway access to Lakeside Drive as depicted on **Exhibit B** may be constructed. If the City determines that left hand turns from the temporary driveway access present a traffic problem, then the City may require Lakewood Hills to place a sign at the exit of the temporary driveway access saying "no left turn" and/or to make reasonable modifications to the concrete traffic island. The office/manager's apartment/maintenance building/garage, together with surface parking, garages and driveways included within the boundary of Phase 3, all as depicted on **Exhibit B**, may be constructed during Phase 2 or at any time prior to or during the construction of Phase 3.

(iii) **Phase 3**: The boundary of Phase 3 shall be as depicted on **Exhibit B**. Existing Structure No. 1, also described as 529 and 533 Lakeside Drive, shall be demolished. Any existing carports not previously demolished shall be demolished during Phase 3. New Structure No. 1, containing Buildings 1 & 2 as depicted on **Exhibit B**, shall be constructed. Access to the underground parking to Buildings 1, 2, 3 & 4 shall be constructed from the driveway located to the north of Building 1. The temporary driveway access from Lakeside Drive to Buildings 3 & 4 shall be removed.

(iv) The relocation of existing underground public sanitary and storm sewer lines to the locations depicted on Drawing C-6 to **Exhibit B** and located in Phase 1, as depicted on Drawing C-2 to **Exhibit B**, shall be completed during Phase 1. The remaining portion of public sanitary sewer located within Phase 2 and Phase 3, as depicted on Drawing C-2 to **Exhibit B**, shall be completed during Phase 2. Prior to the commencement of Phase 1, Lakewood Hills and the City shall execute and deliver any new easement agreement and the

revision, modification or termination of any existing easement agreement that may be reasonably necessary in order to govern the relocated public sanitary and storm sewer lines and to eliminate the effect of any existing easement in locations where new Structures are contemplated in accordance with the drawings and configurations of **Exhibit B.** Lakewood Hills shall provide the City with detailed construction plans, secure state permits if required and obtain inspections of any such relocated public sanitary and storm sewer lines as identified on **Exhibit B**.

2. <u>Issuance of Building Permits</u>. The City shall issue a building permit for each phase provided Lakewood Hills meets all applicable City and State code requirements for the issuance of a building permit and is in substantial compliance with the terms and conditions of this Consent Judgment. Compliance with the Approved Site Plan shall constitute compliance with the City's Zoning Ordinance.

3. <u>Financial Obligations and Security</u>. The construction, improvement, and maintenance of all improvements on the Property shall be undertaken and completed by Lakewood Hills at its sole expense. The City may require irrevocable letters of credit or surety bonds in reasonable amounts to assure completion of landscaping and lighting for a particular Phase. The amount of any such letter of credit or surety bond shall not exceed the amount reasonably determined to be necessary to complete landscaping and lighting for the phase or phases of construction for which a building permit is requested by Lakewood Hills. Upon the completion of landscaping and lighting for a particular phase, the irrevocable letter of credit or surety bond posted with the City by Lakewood Hills for such phase shall be released, terminated or returned.

4. <u>Landscaping.</u> The Landscaping Plan for the Combined Property identified as Drawing C-7 to **Exhibit B** represents the landscaping that shall be performed on the Combined

Property, unless any change is first authorized and approved by the City Commission or its authorized representative as provided on Drawing C-7 to **Exhibit B**.

5.      <u>Exhibits Incorporated by Reference</u>. The attached Exhibits A, B, C, D and E are hereby incorporated by reference and are made a part of this Consent Judgment.

6.      <u>Attorney Fees and Costs</u>. The attorney fees and litigation costs incurred by the respective parties in this proceeding shall not be taxed to any party. Any and all existing and potential claims by the parties for litigation-related attorney fees and/or costs with respect to this proceeding are hereby denied, barred, and dismissed with prejudice and without cost, so that no litigation-related attorney fees, costs or penalties shall be awarded to any party. Notwithstanding the above, the City hereby acknowledges that Lakewood Hills has paid to the City of East Grand Rapids the sum of $51,962.00 which sum represents expenses which were associated with the PUD application of Lakewood Hills pursuant to the City's reimbursement ordinance. Lakewood Hills has no further financial obligation to the City associated with the processing of the PUD Application and shall have no right to appeal or otherwise challenge this amount. Each party shall bear its own costs and expenses incurred with respect to any action or proceeding involving the implementation or enforcement of this Consent Judgment.

7.      <u>Other Conditions on the Development</u>. Continuous ingress and egress from the north and south entrances to the Combined Property shall be maintained at all times except when a particular phase is under construction, during emergency situations, during times of maintenance or repair, or during a temporary blockage caused by circumstances not under the control of Lakewood Hills. All utilities required for development of the Combined Property shall be located underground and shall be installed and maintained according to the approved utilities plan. Any rooftop heating, ventilation, air conditioning or other mechanical structures

shall be completely screened or fenced from view from the street and adjacent properties; provided, that no screening or fencing is required for views from any location above the bottom line of the roof of the Structures. Any satellite dish antennas or other antennas utilized for television or telecommunication purposes shall be placed upon the top of buildings only and not on balconies or sidewalls of any building, subject to the requirements of city ordinance, state and/or federal law.

8.      Shall Run With the Land. All the terms and provisions of this Consent Judgment shall inure to the benefit of, and be binding on, all the parties to this Consent Judgment, as well as all of their predecessors, successors, grantees, transferees and assigns. All the terms and provisions of this Consent Judgment shall run with the land and shall survive any bankruptcy, foreclosure and/or tax sale involving the Property or the Additional Property.

9.      Recording. A certified copy of this Consent Judgment may be recorded with the Kent County, Michigan Register of Deeds by either of the parties to this Consent Judgment.

10.      Jurisdiction and Enforcement. The Court shall retain jurisdiction of this matter, to the extent necessary, for the sole purpose of enforcing the terms and provisions of this Consent Judgment. The City and/or Lakewood Hills, as well as their respective successors, grantees, transferees, and assigns may seek enforcement of this Consent Judgment by motion filed with the Court. Enforcement of this Consent Judgment shall be in the form of such legal or equitable relief as the Court deems warranted, including, but not limited to, contempt citations and permanent injunctions.

11.      Scope. This Consent Judgment applies only to the Property and the Additional Property and none of the terms, conditions, or requirements set forth in this Consent Judgment shall be construed to apply to any other property in the City.

12. <u>Release of Claims</u>. Except as expressly otherwise stated in this Consent Judgment, the parties are released and forever discharged by each other for, from, and against any and all claims, liabilities and causes of action occurring prior to the date of the entry of this Consent Judgment that were asserted or could have been asserted with respect to the Property in this proceeding or arising out of the application of the Zoning Ordinance to the Property.

13. <u>Final Judgment</u>. This Consent Judgment shall be considered to be a final judgment and none of the parties shall seek an appeal from this final Consent Judgment. Neither party shall file any lawsuit of any kind, either in state or federal court, in respect to the applicability or validity of this Consent Judgment, or in respect to any claim that was asserted in this proceeding, or which could have been asserted in this proceeding as arising out of the same transactions or occurrences that are the subject matter of this proceeding, except enforcement proceedings as described in this Consent Judgment.

14. <u>Not a Precedent</u>. This Consent Judgment shall not be considered a precedent by any court or any third party based upon the settlement and compromise reached by the parties hereto and the findings of the parties that the following characteristics make this Consent Judgment unique to this matter and desirable to the City:

(a)     The Property is unique due to:

(i)     Its close proximity to Reeds Lake, Collins Park, and the Gaslight Village shopping district.

(ii)     Its historical uses and location within a historical area.

(iii)     Its unusual shape and size.

(b)     The Property is not a vacant piece of land involving a proposed development that seeks departures from the minimum zoning requirements, but rather the

Property and the improvements currently located on the Property exist as a legal non-conforming development with respect to the Zoning Ordinance. The elimination and replacement of the existing non-conforming development, which contains structures that are obsolete, supports the public purpose of eliminating nonconforming structures in a zoning district as declared by the Michigan Zoning Enabling Act (Act 100 of the Public Acts of 2006, MCL 125,3101 *et seq.*, Section 208.4).

(c)     The Project as proposed will have beneficial impacts on the surrounding neighborhood, including needed upscale living quarters and buildings with improved safety features and increased energy efficiency features.

(d)     The Project will allow for the replacement of existing older buildings and dwelling units (which currently have aesthetic, safety, space, parking, and landscaping limitations) with new state-of-the-art buildings and dwelling units.

(e)     Parking and traffic flow features on site will be significantly improved.

15.     <u>Continuation of Use of the Property</u>.  Notwithstanding the terms and provisions of this Consent Judgment, the Property may continue to be used as it currently exists, and as repaired or remodeled, until such time as the redevelopment and construction contemplated by this Consent Judgment has been completed.

16.     <u>No Admission</u>.  This Consent Judgment shall not be construed as an admission of fact, law, fault, or liability on the part of any of the parties, because the parties have stipulated and consented to the entry of this Consent Judgment solely for the purpose of resolving this proceeding and related issues pending between the parties.

17.     <u>Modification and Non-Waiver</u>.  Neither this Consent Judgment nor any of the terms or provisions hereof shall be altered or modified except in a writing signed by the parties

hereto and incorporated into an amended Consent Judgment filed with and entered by the Court. No waiver of any provision of this Consent Judgment by a party shall occur or be valid unless set forth in a writing signed by all parties hereto.

Subject to the continuing jurisdiction of the Court to enforce this Consent Judgment, this Consent Judgment resolves the last pending claim and closes the case.

/s/ Paul L. Maloney
Hon. Paul L. Maloney
District Court Judge

00200 (111) 491490.12

# EXHIBIT A

# EXHIBIT A

All that part of Lots 19, 20 and 25 and the vacated Barnard Street of Boynton & Judd's Lake Addition to the City of Grand Rapids, (now situated in East Grand Rapids) Michigan, described as: Commencing 455 feet North 2° 37' West from a point on the North line of Wealthy Street which is 577.13 feet South 59° 59' East along the Southerly lines of Lots 17 and 18 of said Addition from the Southwesterly corner of Lot 17; thence North 2° 37' West 217.13 feet; thence North 7° 04' West 211.26 feet to a point of curve; thence Northwesterly along a 123.45 foot radius curve to the left 87.46 feet to a point which is 347.13 feet distant Southeasterly (measured parallel with the North line of Wealthy Street) from the East line of Judd's Subdivision to the City of East Grand Rapids; thence Northeasterly parallel with the East line of said Judd's Subdivision 225 feet more or less to the South line of Lakeside Drive; thence Southeasterly and South 741.52 feet more or less along the West line of Lakeside Drive to a point which is 599.07 feet from the North line of Wealthy Street; thence South 87° 23' West 225 feet to the place of beginning.

PPN: 41-14-33-276-026
Commonly known as 555 Lakeside Drive, S.E., East Grand Rapids, Michigan

500901.1

# EXHIBIT B

Exhibit B is comprised of the following drawings and configurations identified as C-1, C-2, C-3, C-4, C-5, C-6, C-7, A-1, A-2 & A-3. Copies of the drawings and configurations of a size of 24" x 36" are on file with the East Grand Rapids City Clerk.



# Lakewood Hills Apartments

### East Grand Rapids, Michigan

Lakeside Drive

**DRAWING INDEX:**

C-1 - SITE PLAN
C-2 - PHASING PLAN
C-3 - SURVEY
C-4 - NATURAL FEATURES IMPACT PLAN
C-5 - GRADING PLAN
C-6 - UTILITY DESIGN PLAN
C-7 - LANDSCAPE PLAN
A-1 - EXTERIOR ELEVATIONS - BLDGS. 1 & 2
A-2 - EXTERIOR ELEVATIONS - BLDGS. 3 & 4
A-3 - EXTERIOR ELEVATIONS - BLDGS. 5 & 6

PROJECT SITE
(NOT TO SCALE)

LAKEWOOD HILLS APARTMENTS

OWNER:
Lakewood Hills, LLC
St. Clair Shores, Michigan

SITE PLAN
1" = 30'

C-1



# LAKEWOOD HILLS APARTMENTS

OWNER:
Lakewood Hills, LLC
101 Mayer Park Blvd
Suite 104
St. Clair Shores, Michigan 48081

Cornelison
Design Associates, Inc.

PHASE ONE

PHASE TWO

PHASE THREE

SITE PHASING PLAN

SITE LIGHTING

PHASING PLAN

C-2



LAKEWOOD
HILLS
APARTMENTS

EXISTING SITE
SURVEY

C3







LAKEWOOD
HILLS
APARTMENTS

UTILITY PLAN

C-6

07/1628-E





# LAKEWOOD HILLS APARTMENTS
ST. CLAIR SHORES, MICHIGAN

OWNER:
Lakewood Hills, LLC
100 Maple Park Blvd.
Suite 104
St. Clair Shores, Michigan 48081

post associates

cost engineering inc.

Cornelisse
Design Associates, Inc.

DRAWING TITLE:
BUILDING #1 AND #2
EXTERIOR ELEVATIONS

SCALE: 1/16" = 1'-0"

A-1



North Buildings #1 and #2
(Phase Three)
East (Lake) Elevation

LANDMARK TREE-
APPROX. 70' HIGH



North Buildings #1 and #2
(Phase Three)
South Elevation

North Buildings #1 and #2
(Phase Three)
North Elevation

North Buildings #1 and #2
(Phase Three)
West (Parking) Elevation



East Elevation

South Elevation

West Elevation

North Elevation



Manager's Unit

COMPOSITE TRIM AND BRACKETS

ROOFING OPTIONS:
- STANDING SEAM METAL ROOFING
- "SHAKE" METAL ROOFING TILE
- "SLATE LIKE" DIMENSIONAL ASPHALT SHINGLES

LOW-E GLAZING IN CLAD WINDOW SYSTEM

MODULAR BRICK WITH ARCHITECTURAL PRECAST STONE BANDS AND HEADERS

PREFINISHED METAL RAILINGS

MODULAR BRICK WITH RECESSED BANDS OR

ARCHITECTURAL PRECAST STONE

COMPOSITE TRIM AND BRACKETS
METAL PANELS TO MATCH ROOF

ROOFING OPTIONS:
- STANDING SEAM METAL ROOFING
- "SHAKE" METAL ROOFING TILE
- "SLATE LIKE" DIMENSIONAL ASPHALT SHINGLES

LOW-E GLAZING IN CLAD WINDOW SYSTEM

MODULAR BRICK WITH ARCHITECTURAL PRECAST STONE BANDS AND HEADERS

MODULAR BRICK WITH RECESSED

ARCHITECTURAL PRECAST STONE

ALUMINUM ENTRANCE SYSTEM WITH GLASS SIDELIGHTS

NOTE: THESE MATERIALS AND COLORS ARE A REPRESENTATION OF THOSE INTENDED AT THIS TIME AND POSSIBLE IN A L.E.E.D. DESIGNED BUILDING. ACTUAL MATERIALS AND COLORS MAY VARY DUE TO AVAILABILITY, APPLICABILITY, L.E.E.D. CRITERIA, ECONOMIC OR OTHER FACTORS EXISTING AT THE TIME OF CONSTRUCTION.

OWNER:
Lakewood Hills, LLC

Candace
Design Associates, Inc.

BUILDINGS #3 AND #4
EXTERIOR ELEVATIONS



**Center Buildings #3 and #4**
**(Phase Two)**
**North Elevation**

**Center Buildings #3 and #4**
**(Phase Two)**
**South Elevation**

LANDMARK TREE -
APPROX. 70' HIGH



**Center Buildings #3 and #4**
**(Phase Two)**
**East (Lake) Elevation**

COMPOSITE TRIM AND BRACKETS
ROOFING OPTIONS:
- STANDING SEAM METAL ROOFING
- "SHAKE" METAL ROOFING TILE
- "SLATE LIKE" DIMENSIONAL ASPHALT SHINGLES
LOW-E GLAZING IN CLAD WINDOW SYSTEM
ARCHITECTURAL PRECAST STONE BANDS AND HEADERS
PREFINISHED METAL RAILINGS
MODULAR BRICK WITH RECESSED BANDS OR ARCHITECTURAL PRECAST STONE

**Center Buildings #3 and #4**
**(Phase Two)**
**West (Parking) Elevation**

COMPOSITE TRIM AND BRACKETS
METAL PANELS TO MATCH ROOF
ROOFING OPTIONS:
- STANDING SEAM METAL ROOFING
- "SHAKE" METAL ROOFING TILE
- "SLATE LIKE" DIMENSIONAL ASPHALT SHINGLES
LOW-E GLAZING IN CLAD WINDOW SYSTEM
MODULAR BRICK WITH ARCHITECTURAL PRECAST STONE
MODULAR BRICK WITH RECESSED BANDS OR ARCHITECTURAL PRECAST STONE
ALUMINUM ENTRANCE SYSTEM WITH GLASS SIDELIGHTS

**Typical Garage Elevations**

Front Elevation        Side Elevation

NOTE: WEST SIDE OF GARAGE SHALL BE INTEGRAL COLOR, SPLIT FACE CONCRETE BLOCK TO MATCH BRICK COLOR.

NOTE: THESE MATERIALS AND COLORS ARE A REPRESENTATION OF THOSE INTENDED AT THIS TIME AND POSSIBLE IN A LEED DESIGNED BUILDING. ACTUAL MATERIALS AND COLORS MAY VARY DUE TO AVAILABILITY, APPLICABILITY, LEED CRITERIA, COST AND/OR OTHER FACTORS EXISTING AT THE TIME OF CONSTRUCTION.



# LAKEWOOD HILLS APARTMENTS

OWNER:
Lakewood Hills, LLC
St. Clair Shores, Michigan 48081

Cornelison
Design Associates, Inc.

BUILDINGS #5 AND #6
EXTERIOR ELEVATIONS

A-3



**South Buildings #5 and #6**
**(Phase One)**
**North Elevation**

**South Buildings #5 and #6**
**(Phase One)**
**South Elevation**



LANDMARK TREE -
APPROX. 70' HIGH

**South Buildings #5 and #6**
**(Phase One)**
**East (Lake) Elevation**

**South Buildings #5 and #6**
**(Phase One)**
**West (Parking) Elevation**

COMPOSITE TRIM AND
BRACKETS

ROOFING OPTIONS:
- STANDING SEAM METAL
  ROOFING
- "SLATE LOOK" DIMENSIONAL
  ASPHALT SHINGLES

LOW-E GLAZING IN CLAD
WINDOW SYSTEM

MODULAR BRICK WITH
ARCHITECTURAL PRECAST
STONE BANDS AND HEADERS

PREFINISHED METAL RAILINGS

RECESSED BANDS OR
ARCHITECTURAL PRECAST
STONE

COMPOSITE TRIM AND BRACKETS

METAL PANELS TO MATCH ROOF

ROOFING OPTIONS:
- STANDING SEAM METAL ROOFING
- "SHAKE" METAL ROOFING TILE
- "SLATE LOOK" DIMENSIONAL
  ASPHALT SHINGLES

LOW-E GLAZING IN CLAD WINDOW
SYSTEM

MODULAR BRICK WITH RECESSED
ARCHITECTURAL PRECAST STONE
BANDS AND HEADERS

MODULAR BRICK WITH BANDS OR
ARCHITECTURAL PRECAST STONE

ALUMINUM ENTRANCE SYSTEM
WITH GLASS SIDELIGHTS

NOTE: THESE MATERIALS AND COLORS ARE
A REPRESENTATION OF THOSE INTENDED AT
THIS TIME AND POSSIBLE IN A L.E.E.D.
DESIGNED BUILDING. ACTUAL MATERIALS
AND COLORS MAY VARY DUE TO
AVAILABILITY, APPLICABILITY, L.E.E.D.
CRITERIA, ECONOMIC OR OTHER FACTORS
EXISTING AT THE TIME OF CONSTRUCTION

# EXHIBIT C

## SIDEWALK EASEMENT AGREEMENT

For valuable consideration, the receipt and adequacy of which is acknowledged, LAKEWOOD HILLS, L.L.C.., a Michigan limited liability company, with offices at 100 Maple Park Blvd., Suite 104, St. Clair Shores, Michigan 48081 (the "Grantor") grants and conveys to the CITY OF EAST GRAND RAPIDS, a Michigan municipal corporation, whose address is 750 Lakeside Drive, S.E., East Grand Rapids Michigan 49506 (the "City") an easement over and upon the real property in the City of East Grand Rapids, Kent County, Michigan described as follows (the "Easement Area"):

The north 6.5 feet of the south 8.5 feet of the following described parcel;

All that part of Lots 19, 20 and 25 and the vacated Barnard Street of Boynton and Judd's Lake Addition to the City of Grand Rapids (now situated in East Grand Rapids), Michigan, described as: Commencing 455 feet N02°37'W from a point on the North line of Wealthy Street which is 577.13 feet S59°59'E along the Southerly lines of Lots 17 and 18 of said Addition from the Southwesterly corner of Lot 17; thence N02°37'W 217.13 feet; thence N07°04'W 211.26 feet to a point of curve; thence Northwesterly along a 123.45 foot radius curve to the left 87.46 feet to a point which is 347.13 feet distant Southeasterly (measured parallel with the North line of Wealthy Street) from the East line of Judd's Subdivision to the City of East Grand Rapids; thence Northeasterly parallel with the East line of said Judd's Subdivision 225 feet, more or less, to the South line of Lakeside Drive; thence Southeasterly and South 741.52 feet, more or less, along the West line of Lakeside Drive to a point which is 599.07 feet from the North line of Wealthy Street; thence S87°23'W 225 feet to the place of beginning.

PPN: 41-14-33-276-026
Commonly known as Lakewood Hills Apartments, Lakeside Drive, S.E., East Grand Rapids, Michigan (the "Property")

The City agrees that it may use the Easement Area for the sole purpose of constructing, installing, using, operating, repairing, maintaining, replacing and improving a public sidewalk (the "sidewalk") , all in accordance with a certain Consent Judgment between the parties in Civil Action No. 1:09-cv-603, United States District Court for the Western District of Michigan, the terms of which are incorporated herein by reference (the "Consent Judgment") and in accordance with the terms and provisions of this Agreement. The City shall have no control over the Easement Area and shall have no right to construct the sidewalk or otherwise use the Easement

Area for any purpose until Grantor's retaining wall is completed as referred to in the Consent Judgment and below.

The City agrees that the sidewalk may be used for pedestrian and/or non-motorized bicycle traffic only. The sidewalk may not be used by anyone using a skateboard or motorized vehicle. A person who requires transportation by reason of a disability as defined under the Americans with Disabilities Act of 1990, as amended, may operate a motorized or non-motorized wheelchair or any other similar mode of transportation. Further, the City may use motorized equipment for the purpose of removal of snow from the sidewalk or the repair of the sidewalk. The City shall use all reasonable efforts to enforce compliance with the foregoing restrictions on use of the sidewalk and to minimize excessive noise from occurring along the sidewalk during evening and early morning hours.

The Grantor shall be responsible for the rough grading of the Easement Area in order to facilitate the City's construction of the sidewalk. The City shall be responsible for the construction, repair and maintenance of the sidewalk. The sidewalk shall not exceed five (5) feet in width. The sidewalk shall be under the sole control of the City, subject to the terms and provisions of this Agreement. Grantor will be responsible for the care of any vegetation areas. Grantor agrees that the City may have from time to time a temporary, limited license to use Grantor's property adjacent to the Easement Area within which to stage and carry on construction and grading activities necessary to construct, maintain and replace the sidewalk. The temporary limited license may be invoked by the City upon reasonable notice to Grantor in advance of the City's construction or maintenance activities and shall terminate upon completion and site cleanup. This license shall include the right of the City to temporarily remove Grantor's fence, irrigation and landscaping; provided that the City restores them to their prior condition at no cost to Grantor. The City agrees that Grantor shall have no responsibility to repair or maintain the sidewalk and that the City shall bear the sole responsibility for any claim for damages resulting from personal injury, death or otherwise caused in whole or in part by the condition or existence of the sidewalk. Notwithstanding the foregoing, nothing in this Sidewalk Easement Agreement is intended by the parties to create, nor shall anything in it be construed as creating, any obligation to, or rights in, anyone not a party to this agreement, that would not exist independent of this agreement under state law. The Grantor shall not interfere with the City's Easement rights in any way, subject to the terms and provisions of this Agreement.

The City acknowledges that the Grantor will construct a retaining wall over the south 2 feet of the Property. Grantor retains the right to access and use the Easement Area for the purpose of constructing, repairing, cleaning and maintaining the retaining wall. The City shall have no responsibility to repair, maintain or clean the retaining wall; except that the City shall be responsible for the prompt removal of graffiti, if any, from the retaining wall. If the City's sidewalk is damaged as a result of Grantor's maintenance or replacement of the retaining wall, Grantor will repair the sidewalk at no cost to the City.

This instrument shall be binding upon and inure to the benefit of the parties hereto, their heirs, representatives, successors and assigns and the covenants contained herein shall run with the land.

This document is exempt from state and county transfer tax pursuant to MCL 207.526(l) and MCL 207.505(l) as a transfer ordered by the Consent Judgment referred to above.

LAKEWOOD HILLS, L.L.C.

By:_____
   *_____
   Its_____

STATE OF MICHIGAN
COUNTY OF _____

This   Easement   was   executed   on
_____,   20____   by
_____,   the
_____   of   LAKEWOOD
HILLS, L.L.C.., a Michigan limited liability
company,  who  acknowledged  signing  on
behalf of the limited liability company.

_____
*
Notary public, _____,
Michigan
Acting in: _____
My commission expires:_____

CITY OF EAST GRAND RAPIDS

By:_____
   Cindy Bartman
   Its Mayor

And by:_____
   Karen K. Brower
   Its Clerk

STATE OF MICHIGAN
COUNTY OF _____

This   Easement   was   executed   on
_____,   20____  by Cindy Bartman,
the  Mayor,  and  by  Karen  K.  Brower,  the
Clerk,  of  the  City  of  East  Grand  Rapids,  a
Michigan   municipal   corporation,   who
acknowledged  signing  on  behalf  of  the
municipal corporation.

_____
*
Notary public, _____,
Michigan
Acting in: _____
My commission expires:_____

Prepared by:

Robert A. Buchanan
LAW WEATHERS
800 Bridgewater Place
333 Bridge St., N.W.
Grand Rapids, Michigan 49504
(616) 459-1171

When recorded, return to:

Karen Brower, City Clerk
City of East Grand Rapids
750 Lakeside Drive, S.E.,
East Grand Rapids, Michigan 49506

# EXHIBIT D

## EXHIBIT D

Description of area to be deeded to Lakewood Hills, LLC:

Part of Lot 25, Boynton & Judd's Lake Addition to the City of Grand Rapids, part of the NE 1/4, Section 33, T7N, R11W, City of East Grand Rapids, Kent County, Michigan, described as: Commencing at the NE corner of Lakeshore Club Condominium (Kent County Condominium Subdivision Plan No. 14); thence N02°37'00"W 225.88 feet along the Westerly line of Lakeside Drive to the Place of Beginning of this description; thence N07°04'00"W 220.00 feet; thence Northwesterly 296.00 feet along a 348.45 foot radius curve to the left, the chord of which bears N31°58'16"W 287.18 feet; thence N29°37'25"E 46.14 feet; thence S69°57'00"E 30.27 feet; thence Southeasterly 40.00 feet along a 90.00 foot radius curve to the right, the chord of which bears S57°13'04"E 39.67 feet; thence Southeasterly 96.21 feet along a 300.00 foot radius curve to the right, the chord of which bears S35°17'53"E 95.80 feet; thence Southeasterly 73.77 feet along a 188.00 foot radius curve to the right, the chord of which bears S14°52'11"E 73.30 feet; thence S03°37'42"E 321.82 feet to the place of beginning.
508058.1

# EXHIBIT E

# EXHIBIT E
## Legal Description of Combined Property

All that part of Lots 19, 20 and 25 and vacated Barnard Street of Boynton and Judd's Lake Addition to the City of Grand Rapids, (now situated in East Grand Rapids) Michigan, described as: Beginning at the NW corner of Lakeshore Club Condominium (Kent County Condominium Subdivision Plan No. 14), which is N02°37'W 455 feet from a point on the North line of Wealthy Street which is S59°59'E 577.13 feet along the southerly lines of Lots 17 and 18 of said Addition from the Southwesterly corner of Lot 17; thence N02°37'00"W 215.38 feet; thence N07°04'00"W 211.26 feet; thence Northwesterly 87.27 feet along a 123.45 foot radius curve to the left, the chord of which bears N28°09'39"W 85.46 feet to a point which is 347.13 feet distant Southeasterly (measured parallel with the North line of Wealthy Street) from the East line of Judd's Subdivision to the City of East Grand Rapids; thence N29°37'25"E 273.27 feet parallel with the East line of said Judd's Subdivision; thence S69°57'00"E 30.27 feet; thence Southeasterly 40.00 feet along a 90.00 foot radius curve to the right, the chord of which bears S57°13'04"E 39.67 feet; thence Southeasterly 96.21 feet along a 300.00 foot radius curve to the right, the chord of which bears S35°17'53"E 95.80 feet; thence Southeasterly 73.77 feet along a 188.00 foot radius curve to the right, the chord of which bears S14°52'11"E 73.30 feet; thence S03°37'42"E 321.82 feet; thence S02°37'00"E 225.88 feet to the NE corner of Lakeshore Club Condominium; thence S87°27'31"W 225.77 feet along the North line of Lakeshore Club Condominium to the place of beginning.

508017.1